UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEAVENLY HANA LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>HOTEL UNION & HOTEL INDUSTRY OF HAWAII PENSION PLAN,<br><br>Defendant. | Case No. 14-cv-03743-JCS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PREJUDGMENT AND POST-JUDGMENT INTEREST**<br><br>Re: Dkt. No. 119 |

## I.  INTRODUCTION

Plaintiffs Heavenly Hana LLC d/b/a Travaasa Hotel Hana, Green Tea, LLC d/b/a Green Tea Management, LLC, and Amstar-39, LLC (collectively, "Amstar") bring this Motion for prejudgment and post-judgment interest on a refund of overpaid withdrawal liability payments.. This Motion arises out of this Court's previous judgment that Defendant Hotel Union & Hotel Industry of Hawaii Pension Plan (the "Plan") must repay Amstar $372,780 of withdrawal liability that Amstar paid the Plan.  Amstar seeks $65,601.11 plus daily interest of $71.49 from April 1, 2016 until the overpayments are refunded.  The Court held a hearing on the Motion on Friday, June 10, 2016, at 9:30 a.m.  Because Pension Benefit Guaranty Corporation ("PBGC") regulations require that plans refund overpaid withdrawal liability to employers at the same rate that interest is charged to employers on overdue withdrawal liability payments and for the reasons explained below, Amstar's Motion for Prejudgment and Post-Judgment Interest is GRANTED.[1]

## II.  BACKGROUND

In May 2010, Amstar completed its purchase of the assets of Ohana Hotel Company, LLC ("Ohana"), including the hotel that Ohana had been operating in Hana, Hawaii.  Findings of Fact

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

& Conclusions of Law ("FFCL," dkt. 111) ¶ 14, 16.[2] Prior to the sale, Ohana was a party to a collective bargaining agreement that required Ohana to make contributions to the Plan for its employees. *Id.* ¶ 18. Before selling its assets to Amstar, Ohana terminated all 211 employees who worked at the hotel. *Id.* ¶ 17, 19. Ohana stopped contributing to the Plan and withdrew from the Plan pursuant to Employee Retirement Income Security Act ("ERISA") § 4203, 29 U.S.C. § 1383 in May of 2010. *Id.* ¶ 26. Because the Plan has unfunded vested benefit liabilities, employers who withdraw from the Plan are subject to withdrawal liabilities. *See id.* ¶ 12, 61.

On December 5, 2012 the Plan sent a demand letter to Amstar notifying it that it owed withdrawal liability as a successor employer to Ohana. *Id.* ¶ 32. The demand letter assessed Amstar's withdrawal liability at $757,981 and laid out a payment plan with quarterly payments of $74,556. *Id.* ¶ 34. Amstar made five quarterly payments totaling $372,780 before seeking a declaratory judgment that it was not a successor employer to Ohana and therefore owed no withdrawal liability to the Plan. *Id.* ¶ 35, 2. This Court held that Amstar was not liable for the withdrawal liability because Amstar had no notice when it purchased the hotel from Ohana that the Plan was underfunded and thus lacked notice that as a successor employer, Amstar would inherit Ohana's withdrawal liability.[3] *Id.* ¶ 97. The Court ordered the Plan to refund Amstar's $372,780 of overpaid withdrawal liability and gave leave to Amstar to seek to recover interest on that amount. Judgment (dkt. 114), Feb. 24, 2016.

Pursuant to ERISA, the Plan is a multiemployer employee benefit pension plan subject to the Multiemployer Pension Plan Amendments Act ("MPPAA") and the regulations promulgated by the PBGC. FFCL ¶ 7, 61.

Amstar now argues that it should recover interest on its overpaid withdrawal liability. Mot. (dkt. 119) at 2. It notes that § 4219.31(d) of the PBGC regulations require that when "a plan sponsor or arbitrator determines" that withdrawal liability has been overpaid, "the plan sponsor shall refund the overpayment, with interest, in a lump sum." *Id.* at 3. Although this regulation

---

[2] *Heavenly Hana LLC v. Hotel Union & Hotel Indus. of Hawaii Pension Plan*, No. 14-cv-03743, 2016 WL 524327, at *3 (N.D. Cal. Feb. 10, 2016).
[3] The Court also held that had Amstar had appropriate notice that the Plan was underfunded, Amstar would have been liable for Ohana's withdrawal as a successor employer. FCCL ¶ 124.

appears to apply when the plan sponsor or an arbitrator, rather than a court, determines that an employer has overpaid, Amstar argues it is still applicable here. *Id*. at 5. It notes that the Third Circuit has implemented the regulation and awarded interest on overpaid withdrawal liability. *Id.* at 3–5 (citing *Huber v. Casablanca Indus.*, 377 F.3d 288, 304 (3d Cir. 2004); *Bd. of Trs. of Trucking Emps. of North Jersey Welfare Fund, Inc. v. Kero Leasing Corp.*, 916 F.2d 85, 103 (3d Cir. 1990), *abrogated on other grounds by Milwaukee Brewery Workers' Pension Plan v. Joseph Schlitz Brewing Co.*, 513 U.S. 414 (1995)). Amstar relies on *Huber*, where the Third Circuit held that "it would be inequitable and raise serious constitutional questions" if an employer did not recover interest on overpaid withdrawal liability, and argues that "Amstar must be compensated through an award of interest for the Plan's use of its payments" during the relevant period. *See Huber*, 377 F.3d at 304; Mot. at 3–4.

Amstar also claims that allowing it to collect interest on its overpaid withdrawal liability is not a violation of ERISA's anti-inurement provision which states that "the assets of a plan shall never inure to the benefit of any employer." Mot. at 4. Citing *Mary Helen Coal*, a Fourth Circuit case, Amstar argues since it never owed the Plan withdrawal liability, its withdrawal liability payments were never "assets of the Plan" and so the interest earned on those payments is similarly not the Plan's to keep and must be returned to Amstar. *Id*. at 5–6 (citing *Mary Helen Coal Corp. v. Hudson*, 235 F.3d 207 (4th Cir. 2000)).

Amstar argues that the Plan should either pay 7% or 3.25% interest on the overpaid withdrawal liability. Mot. at 8. Acknowledging that the plan document provides for "an unspecified 'prevailing market rate,'" Amstar argues that 7% is the most appropriate rate because the Plan applied this rate to Amstar's unpaid withdrawal liability. *Id.* Amstar states that if the Court believes that 7% is inappropriate then it should default to the 3.25% interest rate supplied by the PBGC for use where plans do not otherwise provide an interest rate. *Id.*

Alternatively, if PBGC regulations do not apply then Amstar argues that it should receive the "overall rate of investment return received by the Plan during the period it held Amstar's payments." *Id.* at 9. The Ninth Circuit has held that an appropriate prejudgment interest rate is "what a reasonably prudent person [would receive] investing funds so as to produce a reasonable

3

return while maintaining safety of principle." *Id.* Amstar argues that the Plan's overall rate of return would be "a good measure" of such a figure. *Id.*

The Plan does not contest that Amstar is owed some amount of interest on its overpaid withdrawal liability payments. Opp'n (dkt. 128) at 1. The Plan argues that either the PBGC default rate should apply, or the Court should apply "well-established precedent to calculate interest." *Id.* at 3.

The Plan agrees with Amstar that unless the plan provides for an interest rate then the PBGC default rate applies. *Id.* at 2. The Plan and Amstar also agree that the default rate was 3.25% for the relevant period. *Id.* The Plan argues that the PBGC rate, rather than the "prevailing market rate" specified in the plan document, should apply. *Id.* The Plan notes that the plan document's "prevailing market rate" provision does not explicitly state that it applies to overpaid withdrawal liability. *Id.* Should the Court choose to apply the "prevailing market rate" to the overpaid withdrawal liability, then the Plan argues that the term "prevailing market rate" is defined by the MPPAA and the PBGC regulations as the PBGC default rate of 3.25% for the relevant period. *Id.* at 2–3. Regardless of whether the Court uses the "prevailing market rate" or the PBGC default rate, the Plan argues that the correct interest rate is 3.25%. *Id.*

The Plan contends that a 7% interest rate is inappropriate as the Plan only applies a 7% interest rate to delinquent payments and "delinquency is not relevant here." *Id.* at 3.

Alternatively, the Plan contends that MPPAA regulations do not apply and should not guide the interest rate the Court awards. *Id.* The Plan claims that the parties agree "that MPPAA regulations do not cleanly apply" since the Court, rather than the plan sponsor or an arbitrator, determined that Amstar's withdrawal liability was overpaid. *Id.* The Plan then argues that "the amount of post-judgment interest in a civil suit is set by statute" and is currently 0.66%. *Id.* at 4. The Plan claims that "fairness dictates a limited amount of pre-judgment interest that mirrors the post-judgment amount." *Id.* The Plan argues that an interest rate of 0.66% is appropriate since it is "the amount that the Federal Reserve calculates that Amstar could have earned on its money during the relevant time period." *Id.*

4

### III. ANALYSIS

#### A. Legal Standard

The Ninth Circuit has recognized that "awards of prejudgment interest . . . 'ensure that a party is fully compensated for its loss.'" *United States v. Bell*, 602 F.3d 1074, 1084 (9th Cir. 2010) (quoting *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 196 (1995)). Typically, courts have substantial discretion in awarding interest that fairly compensates a party for its loss. *See Milwaukee*, 515 U.S. at 196. Here, however, the Court's discretion is confined by PBGC regulations that control what interest rate applies to multiemployer pension plans.

PBGC regulations mandate that when an employer overpays the withdrawal liability due to the plan sponsor, the plan sponsor must "refund the overpayment with interest." 29 C.F.R. § 4219.31(d). Unless the plan provides for an interest rate, the PBGC provides a default rate that will apply. *Id.* § 4219.32(b). Neither the Plan nor Amstar noted that PBGC regulations further require that "[t]he plan sponsor shall credit interest on the overpayment . . . at the same rate as the rate for overdue withdrawal liability payments" as established by either the plan or PBGC regulations. *Id.* § 4219.31(d). This interest is due "from the date of the overpayment to the date on which the overpayment is refunded to the employer." *Id.*

#### B. PBGC Regulations Guide the Interest Rate Amstar is Due

PBGC regulations control what interest rate Amstar is due on its refund of withdrawal liability payments. The Plan is an "employee benefit pension plan" as defined in ERISA § 3(2), 29 U.S.C. § 1002(2), and a "multiemployer plan" as defined in ERISA §§ 3(37) and 4001(a)(3), 29 U.S.C. §§ 1002(37) and 1301(a)(3). FFCL ¶ 5. As such, it is subject to MPPAA provisions which require that interest be paid on withdrawal liability payments in line with the regulations set out by the PBGC. 29 U.S.C. § 1399(c)(6).

PBGC regulation § 4219.31(d) governs the overpayment of withdrawal liability. 29 C.F.R. § 4219.31(d). On its face, the regulation applies to plan sponsors' or arbitrators' determinations of overpayment rather than determinations made by the Court. *Id.* The Plan claims that because this Court, rather than the Plan or an arbitrator, decided that Amstar's withdrawal liability was overpaid, "the parties agree that the MPPAA regulations do not cleanly apply." Opp'n at 3. The

Plan makes this claim over Amstar's repeated objection that the PBGC regulations, as allowed for in the MPPAA, do control. *See* Mot. at 2–5; Reply at 1–2. As this Court has noted, the question of whether an employer is a successor employer, and thus liable for the withdrawal liability of the previous employer, "has generally been addressed by the courts." FFCL ¶ 63. Nor would this Court be the first to implement this specific PBGC regulation and award interest on overpaid withdrawal liability; the Third Circuit has similarly applied § 4219.31(d) in *Kero* and *Huber*. *See Kero*, 377 F.3d at 304; *Huber*, 916 F.2d at 103. In both of these cases the Third Circuit awarded interest on overpayments of withdrawal liability to the employers notwithstanding the PBGC regulation's reference to plan sponsors and arbitrators. *See Kero*, 377 F.3d at 304–05; *Huber*, 916 F.2d at 102–03. The Plan does not distinguish this case from *Kero* or *Huber*. *See* Opp'n at 3. The Court is not persuaded that the outcome should differ where a court, rather than a plan sponsor or arbitrator, is called upon to determine whether an employer is a "successor" employer, and the appropriate interest rate.[4]

### C. Interest Due to Amstar

Applying the reciprocal interest rate rule of § 4219.31(d), the Court holds that Amstar is entitled to an interest rate of seven percent (7%) on the repayment of its overpaid withdrawal liability payments.

#### 1. Prejudgment Interest

The parties agree that if the plan document provides an interest rate then that rate will control, rather than the PBGC default rate of 3.25%. *See* Mot. at 8; Opp'n at 2. The plan document at issue here states that an employer who fails to make "any payment when due" is liable for interest "at the prevailing market rate" until the payment is made. Christenson Decl. Ex. A (dkt. 119-2), Art. XIII § 7(d); *see* Mot. at 8; Opp'n at 2–3. The Plan's Trust Agreement gives further meaning to the interest provision in the plan document, specifying that "contributions. . .

---

[4] In the alternative, if the Court were not bound by the regulations, the Court in its discretion would reach the same result. As a matter of fairness, a 7% interest rate is appropriate here both because the rate should not differ based on the forum in which the dispute is resolved, and also because it is appropriate to assess interest against the Plan at the same rate that the Plan sought to impose against Amstar.

6

unpaid [by the date they are due] shall bear interest from such date at the rate of seven percent (7%) per annum." Jacobs Decl. Ex. N (dkt. 86-5) at 3.[5]  Since the plan document specifies that interest will be charged when "*any* payment" is overdue, this encompasses overdue withdrawal liability payments. *See* Christenson Decl. Ex. A, Art. XIII § 7(d) (emphasis added).  In the Plan's December 5 letter to Amstar demanding payment of withdrawal liability, the Plan applies a 7% interest rate to calculate Amstar's payment schedule.  Christenson Decl. Ex. B (dkt. 119-3) Ex. II.  This indicates that the Plan treated Amstar's unpaid withdrawal liability as an overdue payment pursuant to the Trust Agreement and Plan Document. *See id*; Christenson Decl. Ex. A, Art XIII § 7(d); Jacobs Decl. Ex. N at 3.  PBGC regulations require that "[t]he plan sponsor shall credit interest on the overpayment . . . at the same rate as the rate for overdue withdrawal liability payments." 29 C.F.R. § 4219.31(d).  Therefore, because the Plan applied a 7% interest rate to Amstar's unpaid withdrawal liability payments, the same rate it would have applied had the payments been overdue, it must return the overpaid withdrawal liability at the same rate. *See id.*

### 2. Post-judgment Interest

PBGC regulations mandate that the overpaid withdrawal liability be calculated "from the date of the overpayment to the date on which the overpayment is refunded to the employer." *See id.*  Giving meaning to the regulations, this unites the prejudgment and the post-judgment interest rates into a single interest rate to be applied for the entire period. *See id.*  Since the appropriate interest rate is 7%, this rate applies until the Plan refunds Amstar in full.

### 3. Total Amount Due

This Court previously ordered the Plan to repay the $372,780 in overpaid withdrawal liability that Amstar paid the Plan.  FFCL ¶ 125.  Per the PBGC regulations, the 7% interest rate must be applied from the date of overpayment to the date the overpayment is refunded.  29 C.F.R. § 4219.31(d).  Amstar has calculated the total interest due at the 7% rate to be $65,601.11 plus $71.49 per day beginning April 1, 2016.  Christenson Decl. ¶ 5–6 & Ex. F.  The Plan does not contest Amstar's interest calculations if the 7% rate applies. *See* Opp'n at 3–4.

---

[5] The Jacobs Declaration and accompanying exhibits were filed with the Plaintiff's trial brief.

7

## IV. CONCLUSION

For the forgoing reasons Plaintiff's Motion for prejudgment and post-judgment interest on overpaid withdrawal liability in the amount of $65,601.11, plus daily interest of $71.49 beginning April 1, 2016, is GRANTED.

**IT IS SO ORDERED.**

Dated: June 10, 2016

JOSEPH C. SPERO
Chief Magistrate Judge