United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEAVENLY HANA LLC, et al.,<br>Plaintiffs,<br>v.<br>HOTEL UNION & HOTEL INDUSTRY OF HAWAII PENSION PLAN,<br>Defendant. | Case No. 14-cv-03743-JCS<br><br>**ORDER GRANTING MOTION FOR ENTRY OF JUDGMENT**<br><br>Re: Dkt. No. 162 |

## I. INTRODUCTION

Plaintiffs Heavenly Hana LLC d/b/a Travaasa Hotel Hana, Green Tea, LLC d/b/a Green Tea Management, LLC, and Amstar-39, LLC (collectively, "Amstar") brought this action for declaratory judgment that Amstar did not owe Defendant and Counterclaimant Hotel Union & Hotel Industry of Hawaii Pension Plan (the "Plan") withdrawal liability under the Multiemployer Pension Plan Amendments Act (the "MPPAA") based on Amstar's predecessor's withdrawal from the Plan. The Court previously entered judgment in favor of Amstar after a bench trial on the papers, but the Ninth Circuit reversed this Court's determination that Amstar lacked sufficient notice of its predecessor's liability and vacated the judgment, and the Plan now moves for judgment in its favor. The Court held a hearing on November 30, 2018, at which Amstar did not contest the Court's tentative conclusion that the motion should be granted. For the reasons discussed below, the Plan's motion is GRANTED, and judgment will be entered accordingly.[1]

## II. BACKGROUND

### A. Factual Background and Procedural History

In May 2010, Amstar completed its purchase of the assets of Ohana Hotel Company, LLC

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

("Ohana"), including the hotel that Ohana had been operating in Hana, Hawaii. Findings of Fact & Conclusions of Law ("FFCL," dkt. 111) ¶¶ 14, 16.[2] Prior to the sale, Ohana was a party to a collective bargaining agreement that required Ohana to make contributions to the Plan for its employees. *Id.* ¶ 18. Before selling its assets to Amstar, Ohana terminated all 211 employees who worked at the hotel. *Id.* ¶¶ 17, 19. Ohana stopped contributing to the Plan and withdrew from the Plan pursuant to Employee Retirement Income Security Act ("ERISA") section 4203, 29 U.S.C. § 1383, in May of 2010. *Id.* ¶ 26. Because the Plan had unfunded vested benefit liabilities, employers who withdraw from the Plan were subject to withdrawal liability. *See id.* ¶¶ 12, 61.

On December 5, 2012, the Plan sent a demand letter to Amstar notifying it that it owed withdrawal liability as a successor employer to Ohana. *Id.* ¶ 32. The demand letter assessed Amstar's withdrawal liability at $757,981 and laid out a payment plan with quarterly payments of $74,556. *Id.* ¶ 34. Amstar made five quarterly payments totaling $372,780 before seeking a declaratory judgment that it was not a successor employer to Ohana and therefore owed no withdrawal liability to the Plan. *Id.* ¶¶ 2, 35; Compl. (dkt. 1). The Plan filed a counterclaim, seeking declaratory judgment that Amstar is an employer subject to the MPPAA and an order requiring Amstar to pay the remaining withdrawal liability plus interest. Counterclaim (dkt. 18) at 5–6 (Count One and Prayer for Relief).

This Court held that Amstar was not liable for the withdrawal liability because Amstar had no notice when it purchased the hotel from Ohana that the Plan was underfunded and thus lacked notice that as a successor employer, Amstar would inherit Ohana's withdrawal liability. FFCL ¶ 97. More specifically, the Court held that a buyer "must have actual notice of at least the factual basis for MPPAA withdrawal liability at the time of purchase if the buyer is to be held liable under a theory of successor liability," *id.*, and found that Amstar lacked such notice, *id.* ¶ 59. The Court held that constructive notice would not be sufficient, but went on to determine that Amstar lacked even constructive notice because its investigation was reasonable in light of uncertainty as to the law at the time. *Id.* ¶¶ 98–110. The Court also determined "[i]n an abundance of caution" that

---

[2] *Heavenly Hana LLC v. Hotel Union & Hotel Indus. of Haw. Pension Plan*, No. 14-cv-03743, 2016 WL 524327, at *3 (N.D. Cal. Feb. 10, 2016).

if—contrary to the Court's conclusions—Amstar had sufficient notice, there was sufficient continuity between Ohana's and Amstar's operation of the hotel to consider Amstar a successor for the purpose of withdrawal liability. *Id.* ¶¶ 111–24. After considering arguments regarding the appropriate interest rate, the Court ordered the Plan to refund Amstar's $372,780 of overpaid withdrawal liability plus interest at a rate of seven percent, which at the time came to $65,601.11 plus $71.49 per day. Am. Judgment (dkt. 141). In reaching that conclusion, the Court declined to consider a laches defense asserted by Amstar, holding that the MPPAA required that issue to be arbitrated. FFCL ¶¶ 72–82.

The Plan appealed and prevailed at the Ninth Circuit. *See generally Heavenly Hana LLC v. Hotel Union & Hotel Indus. of Haw. Pension Plan*, 891 F.3d 839 (9th Cir. 2018). The court of appeals held that a constructive notice test is appropriate for withdrawal liability under the MPPAA, and that because Amstar easily could have learned that the Plan was underfunded, it had sufficient constructive notice to inherit Ohana's withdrawal liability. *Id.* at 845–48. The Ninth Circuit therefore reversed this Court's judgment. *Id.* at 848. Amstar did not contest on appeal this Court's conclusion that there was sufficient continuity of operations between Ohana and Amstar to hold Amstar liable as a successor. *See id.* at 844.

The Ninth Circuit did not address the issues of arbitration and laches. *See generally id.* The parties have stipulated that Amstar may demand arbitration of its laches defense no later than ten days after entry of final judgment. *See* Joint Stipulation (dkt. 62) ¶ 41; Mot. (dkt. 162) at 2; Opp'n (dkt. 163) at 2.

**B.     The Parties' Arguments**

The Plan argues in its present motion that, between this Court's previous ruling on continuity of operations and the Ninth Circuit's ruling on constructive notice, nothing more remains to be decided and judgment can be entered declaring that Amstar is an "employer" within the meaning the MPPAA. Mot. at 3. The Plan also argues that Amstar should be required to "pay the remaining sum of withdrawal liability." *Id.* Amstar does not dispute that the Plan is entitled to declaratory judgment that Amstar is an employer subject to the MPPAA, or that it must pay withdrawal liability while arbitration is pending, but asks the Court to allow it to resume

3

installment payments without interest in light of "the change in law mandated by the Ninth Circuit" and the Plan's initial delay in demanding payment. Opp'n at 2, 5. Amstar cites no authority to excuse accrual of interest. *See id.* The Plan argues in its reply brief that Amstar has been and remains required to make payments pending resolution of its challenge to the Plan's demand, that Amstar has been delinquent on those payments since bringing this action, and that delinquent payments are subject to interest under the MPPAA. *See generally* Reply.

### III. ANALYSIS

"Disputes regarding withdrawal liability under the MPPAA generally must be resolved through arbitration," FFCL ¶ 62 (citing, *e.g.*, 29 U.S.C. § 1401(a)),[3] but it is well established that "an employer must make payments within 60 days of the pension plan's demand, regardless of the pendency of arbitration," *Trs. of Amalgamated Ins. Fund v. Geltman Indus., Inc.*, 784 F.2d 926, 932 (9th Cir. 1986) (citing 29 U.S.C. § 1399(c)(2); *Lads Trucking Co. v. Bd. of Trs. of W. Conference of Teamsters Pension Tr. Fund*, 777 F.2d 1371, 1374 (9th Cir. 1985)). "Even if the employer challenges the trustees' withdrawal liability determination, . . . it still must pay according to the trustees' schedule in the interim under the statute's 'pay now, dispute later' collection procedure." *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 197 (1997) (citation and internal quotation marks omitted). In arguing that the Court should compel payment under that framework, the Plan relies on statements by the Ninth Circuit that the Circuit "ha[s] enforced the requirement of payment during arbitration." *Geltman Indus.*, 784 F.2d at 932; *Lads Trucking*, 777 F.2d at 1375.

The Plan does not, however, cite any case in which a court has ordered the relief that it seeks before arbitration has occurred. In both *Geltman Industries* and *Lads Trucking*, arbitration had concluded and the pension plans sought to confirm or collect arbitrators' awards; the Ninth Circuit "enforced the requirement of payment during arbitration" by awarding attorneys' fees

---

[3] This Court previously addressed the question of whether Amstar was a successor to Ohana under the MPPAA, holding that that issue was not amenable to arbitration because it informed the question of whether Amstar was bound by the MPPAA's arbitration requirement. FFCL ¶ 63. The Ninth Circuit similarly addressed that question on appeal without suggesting that it was a matter for arbitration. *See generally Heavenly Hana*, 891 F.3d 839.

under a provision mandating such awards "in all actions to collect delinquent contributions," reasoning that the plans' lawsuits fell within that provision because the employers failed to pay during arbitration as required. *Geltman Indus.*, 784 F.2d at 931–32; *Lads Trucking*, 777 F.2d at 1373–75. Those decisions do not address whether a plan may obtain a court order requiring payment before an anticipated arbitration.

While an employer is unambiguously required to pay withdrawal liability pending arbitration, *see* 29 U.S.C. § 1399(c)(2), the parties' briefs do not meaningfully address the provisions of the statute authorizing judicial actions to collect such payments. Disputes regarding withdrawal liability are governed by 29 U.S.C. § 1401. Under subsection (b)(1) of that statute, amounts demanded by a plan are "due and owing" and a plan "may bring an action in a State or Federal court of competent jurisdiction for collection" so long as "no arbitration proceeding has been initiated." *Id.* § 1401(b)(1).[4] Although arbitration is anticipated here and the parties have stipulated that Amstar may demand arbitration to raise the defense of laches (and perhaps other defenses) within ten days after this Court enters judgment, "no arbitration proceeding ha[d] been initiated" at the time the Plan brought its counterclaim—or, for that matter, to date since then—and the plain language of the statute therefore dictates that withdrawal liability is "due and owing" and the Plan may pursue an action to collect it. *See id.*

Amstar "ask[s] the Court to consider allowing Amstar to resume installment payments, without interest," citing no legal authority for such an outcome, but arguing that it is appropriate in light of the Ninth Circuit having "directed new law regarding [the] question" of whether Amstar is an "employer" within the meaning of the MPPAA. Opp'n at 5. It is plain from the Ninth Circuit's opinion that the court of appeals did not consider its interpretation of the MPPAA to be a change in the law. *See generally Heavenly Hana*, 891 F.3d 839. Although this Court previously decided the question incorrectly, the Ninth Circuit's opinion establishes that Amstar is an "employer" subject to withdrawal liability and has been since the date that Amstar purchased the hotel from

---

[4] Subsection (b)(2) permits an action "to enforce, vacate, or modify an arbitrator's award," but does not apply here because arbitration has not yet occurred and no award has issued. 29 U.S.C. § 1401(b)(2).

5

Ohana. Even if Amstar intended to challenge the Plan's assessment of withdrawal liability, it was required to make payments on the schedule set forth in the Plan's demand and has incurred interest on payments that it failed to make pursuant to that schedule. *See* 29 U.S.C. § 1399(c)(2) ("Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor . . . beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule."); 29 C.F.R. § 4219.31(c)(2) ("If a payment is not made when due under the schedule, the payment is overdue and interest shall accrue . . . .").

Nor can Amstar credibly claim that, in formulating its litigation strategy, it was blindsided by the possibility that it might have to pay withdrawal liability, given that Amstar paid several installments of the withdrawal liability demanded by the Plan before later ceasing payment and bringing the present action. If Amstar wanted to avoid the risk of accruing additional interest—which, as the Plan correctly notes in its reply brief, is meant to be compensatory rather than punitive—Amstar could have continued making payments while it challenged the assessment of liability. If successful, Amstar could have obtained an order requiring the Plan to return such payments with interest owed to Amstar, as this Court in fact ordered before the Ninth Circuit reversed on the issue of notice. Amstar did not take that approach, and instead, by declining to continue making payments, placed itself at risk of incurring additional liability for interest if it did not ultimately prevail.

Finally, to the extent that Amstar relies on the Plan's "undue delay" in demanding payment, Amstar fails to explain how such delay relates to the interest that Amstar seeks to have excused, which accrued only after the Plan demanded payment. Regardless, the effect of any undue delay is the subject is the subject of Amstar's laches defense, an issue the MPPAA reserves for arbitration. *See* FFCL ¶¶ 72–82. Amstar has presented no legal basis for this Court to depart from the regulatory mandate that interest be assessed on unpaid withdrawal liability. *See* 29 C.F.R. § 4219.31(c)(2).

**IV. CONCLUSION**

For the reasons discussed above, the Plan's motion for judgment is GRANTED. Judgment

will be entered in favor of the Plan and against Amstar, declaring that Amstar is an "employer" within the meaning of the MPPAA and requiring Amstar to pay withdrawal liability totaling $358,181 and interest totaling $121,332.02 plus $73.87 per day from December 1, 2018 through the date of judgment, as well as post-judgment interest pursuant to 28 U.S.C. § 1961.[5]

This order and the judgment that will follow are without prejudice to any challenge to the award of withdrawal liability and interest that Amstar may raise in arbitration, except as to issues already decided by this Court or the Ninth Circuit.

**IT IS SO ORDERED.**

Dated: December 3, 2018

JOSEPH C. SPERO
Chief Magistrate Judge

---

[5] Aside from the request that interest be waived, Amstar's opposition brief does not contest the Plan's calculation of withdrawal liability or interest.